**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**CORNELIUS L. HARRIS,**

      **Plaintiff,**

      v.

**RONALD ERDOS, et al.,**

      **Defendants.**

      Case No. 1:21-cv-104
      **JUDGE DOUGLAS R. COLE**
      Magistrate Judge Gentry

**OPINION AND ORDER**

This cause is before the Court on (1) the Magistrate Judge's Order and Report and Recommendation ("R&R") (Doc. 4), which recommends the Court sever and dismiss without prejudice all claims in Plaintiff Cornelius Harris's Complaint (Doc. 3), except for those against Defendants Mahlman, Bell, Osborne, Prater, Davis, and Fri arising out of the alleged events of September 16, 2020; and (2) Harris's Objections (Doc. 7) to the R&R (Doc. 4).

For the reasons discussed more fully below, the Court **OVERRULES** Harris's Objections (Doc. 7) and **ADOPTS IN FULL** the Magistrate Judge's R&R (Doc. 4). The Court accordingly **SEVERS** and **DISMISSES WITHOUT PREJUDICE** all claims in Harris's Complaint (Doc. 3) save for his § 1983 claims against Defendants Mahlman, Bell, Osborne, Prater, Davis, and Fri based on the alleged events of September 16, 2020.

## BACKGROUND

**A. Factual Background**

Plaintiff Cornelius Harris, a former Southern Ohio Correctional Facility ("SOCF") inmate (*see* Notice of Change of Address, Doc. 8), filed a Complaint on April 21, 2021, alleging numerous violations of his civil rights during his incarceration at SOCF. (Compl., Doc. 3). Harris's 58-page Complaint exhaustively catalogs the wrongs he perceives to have been committed against him over the course of more than a year, beginning in September 2019 and continuing through early 2021. Indeed, Harris alleges in detail threats and assaults by SOCF personnel, intentionally unsanitary cell conditions, unwarranted denials of recreation time, trumped-up conduct reports, and punitive segregation.

One of the first discrete allegations, and the one most pertinent to this Opinion, involves an assault allegedly perpetrated on Harris by defendants Osborne, Prater, and Fri, at the direction of defendant Mahlman. Harris claims that on September 16, 2020, Prater and Fri came to his cell and asked Harris if he wanted to attend his use of force hearing. (*Id.* at #81). Harris said that he did wish to attend, at which point Harris claims Prater said he could attend, but that he must do so "at [his] own risk." (*Id.*). Prater then asked Harris "what [he did] to piss off Mahlman." (*Id.* at #83). Harris responded that he had done nothing, and inquired why Prater would ask such a thing. (*Id.*). Prater allegedly responded that Harris was "about to find out." (*Id.*).

Harris says that, upon arriving at the captain's office, defendant Bell said that the officers were "about to teach a cage of rage class" while they had Harris there. (*Id.*). Harris allegedly told Davis that he feared for his safety, to which Davis

2

responded that Harris had "made his bed," and that he would now "have to lay in it." (*Id.*). Bell and Davis then left the room. Just before leaving, Davis told the other officers to "have fun" but that they shouldn't "be too rough," because Harris is "a complainer." (*Id.*). According to Harris, defendants Osborne, Prater, and Fri subsequently attacked him. Prater and Fri struck him on the head, and Osborne choked him from behind. (*Id.* at #83–84). Though Osborn "attempted to slip his arm around [Harris's] neck," Harris's chin was "tucked," so Osborn instead wrapped his around Harris's jaw and "squeeze[d] with all of his strength." (*Id.* at #84). Harris claims he was knocked unconscious, and says that the assault caused him headaches, memory loss, nausea, vomiting and cold sweats. (*Id.*).

According to Harris, Warden Erdos had been "placed on notice" of Osborne, Prater, and Fri's "abusive conduct" by a series of complaints and grievances, but had failed to take disciplinary action otherwise control them. (*Id.* at #85).

**B.    The April 21, 2021, Report And Recommendation**

Magistrate Judge Litkovitz filed an R&R (Doc. 4) on April 21, 2021, pursuant to her screening obligations under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). That R&R recommends severing and dismissing without prejudice all claims in Harris's Complaint, save for those against Defendants Mahlman, Bell, Osborne, Prater, Davis, and Fri arising out of the alleged assault on September 16, 2020. (*Id.* at #137–38).

According to the R&R, dismissal of some of Harris's claims is warranted because the many incidents, and the corresponding defendants, detailed in Harris's Complaint are insufficiently related to one another. That is because a plaintiff may

3

not join claims and defendants into the same action "unless the claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences; and … any question of law or fact common to all defendants will arise in the action.'" (*Id.* at #136 (quoting Fed. R. Civ. P. 20(a)(2))). In this case, the R&R concluded that claims arising out of the varied allegations in the 58-page Complaint, would "involve distinct questions of law and fact" and therefore "are not properly joined." (*Id.*). These allegations include, for example, that on different occasions defendants Taylor and Lewis "threatened [Harris] and denied [him] recreation," that "defendant Yazer jabbed him in the arm with a clipboard," that "defendant Shaw wrote a false conduct report against him," and that "defendant Crabtree struck him in the back with a door key." (*Id.* at #135).

The R&R does recommend permitting Harris's claims arising out of the September 16 incident to proceed. (*Id.* at #136). But even with respect to that incident, the R&R recommends paring down the Complaint. Specifically, the R&R construed the Complaint as attempting to state a claim against Warden Erdos for failing to prevent the September 16 assault despite being "on notice" of a history of abusive conduct on the part of the perpetrating defendants. (*Id.* at #136–37; *see also* Compl., Doc. 3, #85). But, according to the R&R, "'denial of administrative grievances and … failure to remedy the alleged [unconstitutional] behavior'" is not enough to hold a prison official liable under § 1983. (*Id.* at #137 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of 'encouragement' that

4

would make the official liable for such misconduct." (*Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). And if Harris seeks to hold Erdos liable only because of his supervisory position in the prison, the R&R notes that "respondeat superior does not apply to § 1983 claims and may not serve as a basis for liability." (*Id.* (citing, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). After all, § 1983 liability "is premised on active unconstitutional behavior and not a mere failure to act." (*Id.* (citing *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee*, 199 F.3d at 300)).

Harris requested and subsequently received two extensions of his time to object to the R&R. (*See* Docs. 5, 6; 6/8/21 Notation Order). He ultimately timely objected on July 6, 2021. (*See* Doc. 7). The matter is now before the Court.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). That said, objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

To qualify for review, an objection must "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Id.* (citing *Howard*

*v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). And, notwithstanding specificity, a court need not provide de novo review where the objections are frivolous or conclusory. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *Slater v. Potter*, 28 F. App'x 512, 512–13 (6th Cir. 2002).

Even absent a proper objection to the R&R, though, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See, e.g.*, *Mavrakis v. Warden*, No. 5:17 CV 2398, 2018 WL 4104187, at *3 (N.D. Ohio Aug. 28, 2018) (reviewing for clear error absent an objection to a Magistrate Judge's R&R); *Jackson v. Drug Enf't Admin.*, No. 1:21-cv-402, 2022 WL 60312, at *1 (S.D. Ohio Jan. 6, 2022) (same); *Wilkins v. Mahlman*, No. 1:21-cv-312, 2022 WL 44689, at *1 (S.D. Ohio Jan. 5, 2022) (same).

## LAW AND ANALYSIS

While Harris disagrees with the R&R's recommended disposition, his argument in support of that disagreement is somewhat difficult to follow. In particular, it is unclear whether Harris believes that his Complaint embodies a single claim for relief, or multiple claims. Several parts of Harris's Objection could support the former interpretation. For example, Harris asserts that each discrete incident alleged in his Complaint represents only "a part of the treatment [Harris] received

since [he] arrived at SOCF," (Obj., Doc. 7, #150), and that the Complaint lays out a "systematic scheme" among SOCF officials to deprive him of his rights (*see id.* at #149). Later, he refers to "this instant action"—apparently referring to the Complaint as a whole—as "a genuine conditions of confinement claim." (*Id.* at #151). Other parts of his argument, in contrast, seem to contemplate multiple claims for relief. For example, the first sentence of his Objection asserts that his Complaint "[laid] out several related and connecting conditions of confinement claim[s]," (*id.* at #149), and the final sentence requests that the Court allow "each claim" to proceed (*id.* at #151).

Thus, the Court considers Harris's objection susceptible to at least two plausible interpretations. First, Harris might mean to argue that the entire Complaint comprises a single claim against all defendants and therefore satisfies the joinder provisions in the Federal Rules. (*See id.* at 150 ("Each issue I raised in my Complaint is a part of the treatment I've received ….")). Second, Harris might mean to argue that he has advanced multiple distinct claims against the various named defendants but that, contrary to the R&R's conclusion, those claims in fact arise out of the same "series of transactions or occurrences" as that phrase is used in Rule 20. However interpreted, though, Harris's objection fails.

Start with the "single claim" theory. The Court first notes that this interpretation seems in tension with the Complaint itself. Indeed, Harris's Complaint requests different relief from different sets of defendants, apparently based on their differing conduct. For example, Harris requests (1) one hundred thousand dollars from a group of defendants for their "physically assault[ing]" him; (2) fifty thousand

7

dollars from a different set of defendants for their "systematic[]" denial of his recreation time; and (3) twenty thousand dollars jointly and severally from another slightly different set of defendants for their falsification of conduct reports, which led to Harris's placement in punitive segregation. (Compl., Doc. 3, #130). This differentiation appears inconsistent with the notion that each incident is only a constituent part of a larger, single claim.

Setting that aside, however, the only cause of action Harris might advance on this theory is that of civil conspiracy. This possibility does draw some support from his Objection, which describes the treatment he received as a "systematic scheme" that permeated his time at SOCF. (Obj., Doc. 7, #149). But Harris's Complaint, even when liberally construed, does not adequately allege a conspiracy. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirators shared in the objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with some specificity; vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007) (allegations of fact must support a "plausible suggestion of conspiracy," not merely a "possible" one).

8

Harris's Complaint appears to hint at a conspiracy, but hint is all that it does. Indeed, the verbiage Harris selects in his Objection illustrates why the Complaint fails in this regard. In trying to link certain of the events alleged in the Complaint, Harris points to his allegation that Defendant Layne told Harris that "one day" the guards would "break [Harris's] bottom jaw." (Obj., Doc. 7, #149). Harris then points to the September 16 incident, where he alleges that Defendant Osborne "attempted to slip his arm around [Harris's] neck" but instead "wrapped his arm around [Harris's] jaw," (*see* Compl., Doc. 3, #84), which Harris characterizes as an attempt to break his jaw, (Obj., Doc. 7, #150). This attempt to break his jaw, Harris argues, "correlates" with the threat made earlier by Layne. (*Id.*).

But "correlation" is not enough to state a claim for conspiracy; "correlation" suggests only the possibility, rather than the plausibility, of conspiracy. *See Twombly*, 550 U.S. at 566. And Harris does not explain, either in his Complaint or in his Objection, "when, how, or where the individual defendants reached an agreement or shared plan, or how they engaged in any joint action, to violate [his] civil rights." *Allen v. Clark*, No. 1:13cv326, 2014 WL 3016075, at *8 (S.D. Ohio July 3, 2014). Indeed, contrary to a "shared plan" to break Harris's jaw, according to Harris's allegations, Osborne was attempting to put his arm around Harris's *neck*. According to Harris, Osborne ended up placing his arm around Harris's jaw only because Harris tucked his jaw. That does not plausibly allege that Osborne had agreed to a jaw-breaking plan. Thus, even if Harris sought to advance a conspiracy-type claim based on the sum total of the conduct in the Complaint, that claim would fail. *See Harrison*

*v. Crick*, Civil No. 0:19-81-HRW, 2020 WL 61281, at *3 (E.D. Ky. Jan. 6, 2020) (dismissing conspiracy claim where plaintiff merely "sprinkl[ed] his complaint with unexplained assertions that various defendants acted 'in concert' or as part of an undefined 'campaign' to violate his rights").

Second, as noted, Harris might mean to argue that, while the Complaint advances separate claims against the various defendants (or groups of defendants), the claims are sufficiently related so as to properly comprise a single action. To be sure, Rule 20 would allow joinder if the claims pertaining to the various defendants were part of the same "series of transactions or occurrences." But under the law of this circuit, the potential claims here do not meet that standard.

Courts in this circuit have required the transactions or occurrences that constitute a "series" to have some substantial relationship to one another, and have explicitly rejected the argument that mere commonality among otherwise unrelated events is enough to make them part of the same series. *See Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988) (affirming severance and dismissal of misjoined RICO and antitrust claims where "the various transactions … 'involve different banks, different contracts and different terms'"); *DIRECTV, Inc. v. Collins*, 244 F.R.D. 408, 410 (S.D. Ohio) ("transactional relatedness element" of Rule 20 unmet where "transactions are logically related to one another" only "in the same way that purchases of milk from the grocery store are logically related to each other: each transaction involves a … similar good for a similar purpose") (citation and internal quotation marks omitted); *United States v. Katz*, 494 F. Supp. 2d 645, 648–49 (S.D.

10

Ohio 2006) (similar but unrelated fraudulent conveyances by different defendants in connection with government cleanup of single hazardous waste site did not form same series of transactions).

And in analyzing whether different claims arise out of the same transaction or occurrence, the Sixth Circuit has focused on overlapping proof. That is, claims are more likely to arise out of the same "transaction or occurrence" if "the same issues of fact would determine both claims." *Moore v. Mich. Dep't of Corr.*, No. 17-6107, 2018 U.S. App. LEXIS 25325, at *4–5 (6th Cir. Sep. 5, 2018) (citing *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, It. v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969)). On the other hand, "if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." *Id.*; *see also Walls v. Host Int'l, Inc.*, No. 1:15-CV-00564, 2015 WL 4644638, at *3 (N.D. Ohio Aug. 4, 2015) ("[C]laims arise [out] of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and the court." (citing 7 Wright & Miller, Federal Practice & Procedure Civil § 1683 (3d ed. 2015)).

Viewed in this light, the Court agrees with the R&R that any claims Harris might have against defendants uninvolved in the September 16 assault do not arise out of the same series of transactions or occurrences. Consider Harris's allegation that in January 2021, Defendant Gleim told Harris that Harris would "pay for putting [Gleim] in [Harris's] lawsuit," and soon after "cut short" Harris's recreational time

11

without justification and referred to Harris using a racial epithet. (Compl., Doc. 3, #119). This factual allegation ostensibly advances a retaliation claim—but it occurred almost four months after the September 16 assault, and the Court perceives no factual proof or question of law common to both events. Indeed, Gleim was not party to the September 16 assault, and each claim stems from a different constitutional provision with a different legal standard (i.e., the Eighth Amendment provides the basis for Harris's excessive force claim predicated on the September 16 assault, while the First Amendment protects against retaliation for protected speech).

    The same is true of Harris's other claims, including those based on allegations (1) that defendants Taylor and Lewis threatened Harris and denied him recreation, (2) defendant Yazer jabbed him in the arm with a clipboard, (3) defendant Shaw wrote a false conduct report against him, and (4) defendant Crabtree struck him in the back with a door key. To be sure, one commonality is obvious: all the allegations involve Harris and his time at SOCF. But this commonality does not show the sort of substantial relationship required to pass muster under Rule 20. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner."). And the fact that all of Harris's allegation might, at some level of generality, be called "conditions of confinement" claims does not mean that they are all related enough to be joined in one action.

The Court recognizes that "[u]nder the [Federal Rules of Civil Procedure], … joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). But the Court is also cognizant that any judicial economy gained by consolidating separate claims or defendants into a single action is quickly lost when those claims or defendants are unrelated. *See George*, 507 F.3d at 607 ("Unrelated claims against different defendants belong in different suits … to prevent the sort of morass that this 50–claim, 24–defendant suit produced …."). Moreover, where, as here, the plaintiff is incarcerated, interpreting the joinder provisions too expansively would foil the explicit purpose of the Prison Litigation Reform Act ("PLRA"), "which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts." *Odom v. Christiansen*, Case No. 1:18-cv-81, 2018 WL 4959059, at *3 (W.D. Mich. Oct. 15, 2018) (citing *Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004)); *see also George*, 507 F.3d at 607 (noting that limitations on joinder prevent an end-run around the PLRA and "ensure that prisoners pay the required filing fees").

In sum, the Court agrees with the R&R that most of the 32 defendants here are misjoined. But that leads to the perhaps harder question of remedy. In the case of misjoinder, a court has two options: it may (1) drop misjoined parties "on just terms"; or (2) sever any claim against a party. Fed. R. Civ. P. 21; *Roberts v. Doe*, No. 16-2082, 2017 WL 3224655, at *2 (6th Cir. Feb. 28, 2017); *see also Cage v. Mich.*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018). The district court has discretion to select which parties to drop or claims to sever. *See Letherer v. Alger*

13

*Grp., L.L.C.*, 328 F.3d 262, 266 (6th Cir. 2003); *Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 612 (6th Cir. 2003). A court may not, however, dismiss the entire action for misjoinder. Fed. R. Civ. P. 21.

This choice—between "dropping" defendants or "severing" claims—has procedural implications. *See Kitchen v. Heyns*, 802 F.3d 873, 874–75 (6th Cir. 2015) ("The two remedies have 'quite different' legal effects." (quoting *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006))); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). When the court "severs" a claim against a defendant, "the suit simply continues against the severed defendant in another guise," *Leto,* 467 F.3d at 845, and the court treats the severed claims "as if the plaintiff had originally filed two separate lawsuits," *Kitchen*, 802 F.3d at 874. *See also Jones v. Pancake*, Civil Action Nos. 3:06CV-P188-H, 3:07CV00634-JGH, 0:07-cv-00111-HRW, 2007 WL 4104568, at *3 (W.D. Ky. Nov. 14, 2007) ("Severance under Rule 21 results in separate actions."). Thus, with respect to the severed claims, the plaintiff receives the benefit of his original filing date for statute of limitation tolling purposes. *Leto,* 467 F.3d at 845.

"Dropping" a defendant, on the other hand, has "potentially adverse statute-of-limitations consequences," because in such a case, the court treats the initial complaint as if it never existed against that defendant. *Leto*, 467 F.3d at 845. Thus, the statute of limitations is *not* tolled as to claims against the dropped defendant.

Here, the R&R recommends the Court "sever[] and dismiss[] without prejudice" all claims in Harris's Complaint except for those against Erdos, Mahlman, Bell, Osborne, Prater, Davis, and Fri arising out of the September 16 incident. (R&R,

14

Doc. 4, #138). The Court adopts this remedy, but adds two points of clarity given the procedural implications discussed above. First, to avoid any prejudice to Harris, this Order is to operate as a severance and subsequent dismissal of all claims against the defendants not involved in the September 16 assault, thereby tolling the statute of limitations as to those claims. Although it is not clear that any potential claim in the Complaint is currently time-barred, that window is closing. Indeed, the statute of limitations for § 1983 claims brought in Ohio is two years, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989), and many incidents in Harris's Complaint allegedly occurred in 2020.

Second, however, the Court declines to open new cases for the severed claims, and does not intend the dismissal to operate as a "strike" for purposes of the PLRA. *See* 28 U.S.C. § 1915(g) (restricting prisoners from proceeding in forma pauperis after three dismissals). The Court "finds this result to be more just than directing the Clerk to automatically open cases for the severed claims because this approach allows [Harris] the opportunity to consider whether he would like to pursue separate actions, which could subject him to paying additional filing fees." *Alford v. Mohr*, No. 2:19-cv-1497, 2019 WL 1876776, at *2 (S.D. Ohio Apr. 26, 2019), report and recommendation adopted, No. 2:19-cv-1497, 2019 WL 3000964 (S.D. Ohio July 10, 2019).[1]

---

[1] Dismissing certain claims or parties and retaining others might naturally raise the question of how the Court should decide which claims or parties to retain. In this case, it appears that the R&R considered the first named defendant, Warden Erdos, and then looked to the first discrete factual allegation with which he was associated in the Complaint. That seems to the Court as logical a selection criterion as any. After all, "[j]oinder of parties would seem, necessarily, to start with the first-named party because joinder of parties is not an issue until an additional party is named." *Brown v. Howell*, No. 2:21-cv-128, 2022 WL 2114945, at *5 n.4

Finally, moving to the merits, the R&R made only one determination. Though Harris seemingly attempts to state a claim against Erdos arising out of the September 16 incident, the R&R recommends dismissing that claim against Erdos, as well. Harris fails to specifically object to this recommendation, and the Court does not find it clearly erroneous. *See* Fed. R. Civ. P. 72(b) (advisory committee notes); *Mavrakis*, 2018 WL 4104187, at *3 (reviewing for clear error even absent an objection to the R&R). Section 1983 liability requires affirmative conduct. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008). So mere failure to act does not create liability, *id.* at 576, and officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). All Harris alleges is that Erdos knew of the history of "abusive conduct" by defendants Osborn, Prate, and Fri, and that he failed to discipline or control them. This allegation amounts only to a failure to act and, as such, any claim against Erdos arising out of the September 16 incident necessarily fails.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Harris's Objections (Doc. 7) and **ADOPTS IN FULL** the Magistrate Judge's R&R (Doc. 4). The Court accordingly **SEVERS** and **DISMISSES WITHOUT PREJUDICE** all claims in

---

(W.D. Mich. June 13, 2022) (accepting "the first-named party as the foundation for the joinder analysis").

Harris's Complaint (Doc. 3) save for his § 1983 claims against Defendants Mahlman, Bell, Osborne, Prater, Davis, and Fri based on the alleged events of September 16, 2020.

**SO ORDERED.**

August 3, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**